# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

MONTESE HARRIS, # 10496-003,    *
                                *
    Petitioner,           *
                                * CRIMINAL NO. 20-00089-JB-B
vs.                             * CIVIL ACTION NO. 22-00098-JB-B
                                *
UNITED STATES OF AMERICA,       *
                                *
    Respondent.           *

### REPORT AND RECOMMENDATION

Pending before the Court is Petitioner Montese Harris's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence. (Doc. 291). This matter has been referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), S.D. Ala. GenLR 72(a)(2)(R), and Rule 8(b) of the Rules Governing Section 2255 Proceedings, and is now ready for consideration.[1] Having carefully reviewed the record, the undersigned finds that no evidentiary hearing is necessary for the disposition of this matter.[2] Upon consideration,

---

[1] Chief United States District Judge Jeffrey U. Beaverstock presided over the proceedings in this action. The undersigned has reviewed Harris's motion and all other relevant documents in the Court's file and has fully familiarized herself with the proceedings before Judge Beaverstock.

[2] A district court is not required to hold an evidentiary hearing on patently frivolous claims, claims that are based upon unsupported generalizations, or claims that are affirmatively contradicted by the record. Holmes v. United States, 876 F.2d 1545, 1553 (11th Cir. 1989).

the undersigned hereby recommends that Harris's § 2255 motion be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Montese Harris.  The undersigned further recommends, in the event Harris requests a certificate of appealability and seeks to appeal *in forma pauperis*, that said requests be **DENIED**.

## I.    BACKGROUND

Petitioner Montese Harris ("Harris") was indicted in June 2020 and charged with one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846 (count one), and two counts of possession with intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1) (counts ten and seventeen).  (Doc. 1).

On January 11, 2021, Harris's counsel[3] gave notice of Harris's intent to plead guilty to count seventeen of the indictment pursuant to a written plea agreement.  (Doc. 130).  In the plea agreement, the Government agreed, *inter alia*, to recommend that Harris be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.  (Doc. 154 at 6).  On February 24, 2021, Harris entered a plea of guilty to the charge

---

[3] Attorney Arthur Madden was appointed to represent Harris in this case on November 9, 2020.  (Doc. 92).

in count seventeen of the indictment and was adjudicated guilty of that offense. (Docs. 155, 300).

The draft presentence investigation report ("PSR") calculated Harris's guideline imprisonment range to be 140 to 175 months, based on a total offense level of 29 and a criminal history category of V. (Doc. 158 at 18). In Harris's written response to the PSR, defense counsel objected to the criminal history point assessed for a 2008 misdemeanor marijuana conviction and asserted more generally that Harris's criminal history score was misleading because his prior convictions were primarily low-level convictions for drug possession, which were best understood in light of Harris's longstanding drug addiction. (Doc. 170). A final PSR was issued on May 17, 2021, which was unchanged from the draft PSR. (Doc. 174; see Doc. 175).

At his sentencing hearing on May 25, 2021, Harris confirmed that he understood the contents of the PSR. (Doc. 301 at 2). Harris's counsel reiterated his objection to the scoring of the 2008 misdemeanor marijuana conviction but recognized that its removal would not change Harris's criminal history category. (Id. at 3). The Court denied the objection and adopted the PSR as published. (Id. at 3-4). The Court then reviewed the calculation of the advisory guideline range, as follows:

> We start with a base offense level of 30. Mr. Harris receives a two-level enhancement because a dangerous weapon was possessed. This produces an

adjusted offense level of 32. Mr. Harris is entitled to a three-level reduction for acceptance of responsibility, producing a total offense level of 29. Mr. Harris has 12 criminal history points, and that places him in Criminal History Category V.

This yields the following advisory guideline ranges: For custody, the guideline range is 140 to 175 months. The guideline range for supervised release is four to five years. The guideline fine range is $30,000 to five million dollars. And Mr. Harris is due to pay a special assessment in the amount of $100.

(Id. at 4-5). Harris's counsel did not object to the guideline calculation. (Id. at 5). The Court sentenced Harris to 140 months' imprisonment and dismissed the remaining counts against Harris on the Government's motion. (Id. at 14, 16).[4] Harris did not appeal his conviction or sentence.

On February 22, 2022,[5] Harris filed the instant § 2255 motion asserting two grounds for relief based on his counsel's alleged ineffective assistance during his sentencing proceedings. (Docs. 291, 291-1). The Government filed a response in opposition (Doc. 306), and Harris filed a reply. (Doc. 318). Harris's § 2255 motion is therefore ripe for review.

---

[4] The Court entered a judgment consistent with the pronounced sentence on June 4, 2021. (Doc. 197).

[5] Under the mailbox rule, "a pro se prisoner's motion to vacate is deemed filed the date it is delivered to prison authorities for mailing." Adams v. United States, 173 F.3d 1339, 1341 (11th Cir. 1999) (per curiam). Absent evidence to the contrary, that date is presumed to be the date the prisoner signed the motion. Washington v. United States, 243 F.3d 1299, 1301 (11th Cir. 2001) (per curiam). Harris's § 2255 motion is dated February 22, 2022. (Doc. 291 at 13).

## II.  **HABEAS STANDARD**

The limited scope of habeas relief is well established, as this Court has recognized:

> Collateral relief is an extraordinary remedy which "may not do service for a[ ] [direct] appeal." United States v. Frady, 456 U.S. 152, 165, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); see also Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) ("Courts have long and consistently affirmed that a collateral challenge, such as a § 2255 motion, may not be a surrogate for a direct appeal."). A defendant who has waived or exhausted his right to appeal is presumed to stand "fairly and finally convicted." Frady, 456 U.S. at 164. Unless a claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained extremely limited. United States v. Addonizio, 442 U.S. 178, 185, 99 S. Ct. 2235, 60 L. Ed. 2d 805 (1979). Consequently, "[i]f issues are raised and considered on direct appeal, a defendant is thereafter precluded from urging the same issues in a later collateral attack. . . . A defendant is, of course, entitled to a hearing of his claims, but not to duplicate hearings. The appellate process does not permit reruns." Moore v. United States, 598 F.2d 439, 441 (5th Cir. 1979).

United States v. Evans, 2008 U.S. Dist. LEXIS 59836, at *8-9, 2008 WL 3200694, at *3 (S.D. Ala. Aug. 6, 2008).

## III. **DISCUSSION**

### A.  **Ground One**

In ground one of his § 2255 motion, Harris claims that his counsel was ineffective for failing to object to the two-level increase to his offense level for possession of a dangerous weapon because the sentencing guideline subsection cited in the PSR in connection with the dangerous weapon enhancement "did not apply to him." (Doc. 291 at 4; Doc. 291-1 at 8-10). Harris asserts that

5

but for counsel's error in failing to object to the enhancement, his total offense level would have fallen from 29 to 27, which would have resulted in a lower guideline range and ultimately a lower sentence. (Doc. 291-1 at 11-12).

To prevail on a claim of ineffective assistance of counsel, Harris must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness, and (2) counsel's poor showing prejudiced his defense because there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Harris bears the burden of proving his ineffective assistance claims, and he must meet his burden on both prongs to succeed. Williams v. Allen, 598 F.3d 778, 789 (11th Cir. 2010). A court "need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa." Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) (internal citation omitted).

With regard to the first prong, the proper measure of attorney performance is whether counsel's performance was objectively reasonable under prevailing professional norms considering all the circumstances. Hinton v. Alabama, 571 U.S. 263, 273 (2014) (per curiam). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance. Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010).

To establish prejudice under Strickland, Harris must show more than that the alleged errors had "some conceivable effect on the outcome of the proceeding." Marquard v. Sec'y for Dep't of Corr., 429 F.3d 1278, 1305 (11th Cir. 2005) (quotation omitted). Rather, Harris "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

The record reflects that there was a scrivener's error in both the draft and final PSRs prepared by the probation office, which apparently neither the attorneys nor the sentencing court took notice of. Specifically, the PSR applied a two-level increase to Harris's total offense level based on the following specific offense characteristic: "Pursuant to U.S.S.G. §2D1.1(b)(2), if a dangerous weapon was possessed, two-levels are added." (Doc. 158 at 9; Doc. 174 at 9). The PSR's reference to § 2D1.1(b)(2) in connection with a dangerous weapon increase was plainly erroneous because § 2D1.1(b)(2) applies only if "the defendant used violence,

made a credible threat to use violence, or directed the use of violence[.]" U.S.S.G. § 2D1.1(b)(2). The correct guideline subsection for an offense level enhancement based on a defendant's possession of a dangerous weapon is § 2D1.1(b)**(1),** which states: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." Id. at § 2D1.1(b)(1).

While Harris discusses § 2D1.1(b)(2) at length and studiously avoids reference to the correct guideline subsection, he cannot dodge the fact that his argument is based entirely on a typographical error in the PSR. Indeed, notwithstanding the PSR's reference to the wrong subsection of § 2D1.1(b), it is absolutely clear from the record that Harris's offense level was increased by two levels because he possessed a firearm during conduct relevant to his offense, and that there was an unassailable factual basis for the enhancement.

As noted *supra*, the PSR increased Harris's offense level by two points because "a dangerous weapon was possessed[.]" (Doc. 158 at 9; Doc. 174 at 9). Harris's factual resume, which he swore was true and correct, noted in relevant part:

> On June 28, 2018 and on July 16, 2018, ATFE investigators used a confidential informant to make controlled buys of methamphetamine from co-defendant Montese Harris in Mobile County, Alabama. On both occasions Harris contacted another person, identified during the investigation as co-defendant Bennett, to bring the drugs. Bennett drove the white Lexus to Harris' residence for the deals. Harris got the drugs purchased by the informant from Bennett on both occasions. **On the**

**first occasion, while the informant and Harris were driving around Prichard, Alabama, the informant related that Harris removed a gun from his pocket and placed it in his lap.** When Harris called the Bennett to deliver the drugs, Harris directed the informant to travel to an address on Superior Drive. Bennett pulled up in a white Lexus and Harris took the informant's cash and walked to the Lexus. He came back to the informant with the drugs, which were found to be 18.17 grams of meth actual. On the second occasion, Harris added some additional methamphetamine from his own bag of drugs to make up the full 28 grams in one of the two bags purchased. The drugs from the second buy amounted to 43.50 grams of meth actual.

(Doc. 154-1 (emphasis added); see also Doc. 154 at 3, 8; Doc. 300 at 3-4, 9). The offense conduct section of the PSR, to which Harris did not object, likewise noted that Harris "removed a gun from his pocket and placed it on his lap" while driving around with the confidential informant prior to the first of two controlled drug purchases involving Harris. (Doc. 158 at 7; Doc. 174 at 7).[6]

At the sentencing hearing, defense counsel confirmed that he had discussed the PSR with Harris, and Harris stated that he understood the contents of the PSR. (Doc. 301 at 2). The Court went through the guideline calculation and specifically noted that Harris was receiving "a two-level enhancement because a dangerous

---

[6] The two-level enhancement for possession of a firearm or other dangerous weapon "is to be applied whenever a firearm is possessed during conduct relevant to the offense of conviction." United States v. Smith, 127 F.3d 1388, 1390 (11th Cir. 1997) (per curiam). "Relevant conduct includes acts that were part of the same course of conduct or common scheme or plan as the offense of conviction." Id. (quotation omitted).

weapon was possessed." (Id. at 4). The Court adopted the PSR, which erroneously referenced the wrong guideline subsection for the two-level enhancement for possession of a dangerous weapon, without change. (Doc. 198 at 1; Doc. 301 at 4). The Court imposed a sentence at the low end of the guideline imprisonment range, as recommended by the Government pursuant to the plea agreement. (See Doc. 154 at 6; Doc. 197 at 2; Doc. 301 at 9, 13-14).

When a sentencing error is raised for the first time in a § 2255 motion as a claim of ineffective assistance of counsel, the alleged "error must at least satisfy the standard for prejudice that we employ in our review for plain error." Gordon v. United States, 518 F.3d 1291, 1298 (11th Cir. 2008). Thus, the movant must "establish 'a reasonable probability of a different result' at sentencing" but for counsel's failure to object to the error. Id. (quoting United States v. Underwood, 446 F.3d 1340, 1343-44 (11th Cir. 2006)).

Although the PSR cited the wrong subsection of § 2D1.1(b), Harris cannot show that he was prejudiced by his attorney's failure to object to the two-level increase for possession of a dangerous weapon. Given Harris's sworn agreement to the accuracy of the factual resume, which reflected that Harris placed a gun on his lap during conduct relevant to his offense of conviction, defense counsel had no valid factual basis to object to a two-level increase for possession of a dangerous weapon. Harris makes no

10

argument to the contrary and appears to tacitly acknowledge that he possessed a firearm during conduct relevant to his offense. (See Doc. 291-1 at 9).

Instead, Harris focuses on the PSR's erroneous citation to § 2D1.1(b)(2) rather than § 2D1.1(b)(1) in connection with the dangerous weapon enhancement, and he asserts that his attorney was ineffective for failing to argue that § 2D1.1(b)(2) did not apply. (See id. at 10). While it is clear that the PSR cited the wrong guideline subsection, it is equally apparent that if counsel had recognized this error in the PSR and objected on the grounds that Harris's offense conduct did not satisfy § 2D1.1(b)(2), Harris would still have been subject to the two-level enhancement for possession of a dangerous weapon, and the only change would have been a correction of the applicable guideline subsection to § 2D1.1(b)(1). See Hernandez v. United States, 2021 U.S. App. LEXIS 39690, at *4, 2021 WL 7449816, at *2 (11th Cir. Sept. 1, 2021) (finding that § 2255 movant failed to establish that he was prejudiced by his counsel's failure to discover an error in the PSR when, "if counsel had noticed the PS[R]'s error and brought it to the court's attention, the only change would have been to the typographical error in the PS[R]").

Thus, even assuming arguendo that counsel's failure to raise an objection based on the PSR's reference to the incorrect guideline subsection amounted to deficient performance, Harris

cannot meet his burden to establish prejudice because he cannot show that such an objection would have resulted in a different sentence. Accordingly, Harris is entitled to no relief with respect to ground one.

**B. Ground Two**

In ground two, Harris asserts that his counsel was ineffective for failing to raise certain objections to the PSR's calculation of his criminal history score. (Doc. 291 at 5; Doc. 291-1 at 13-16). Specifically, Harris argues that his counsel performed deficiently by failing to object to the assessment of criminal history points for five prior sentences that he alleges were inaccurately counted or should not have been counted at all. (Doc. 291-1 at 15-16). Harris claims that his "accurate" criminal history score was five rather than twelve, which would have placed him in criminal history category III and resulted in a reduced guideline range and sentence. (Id. at 16). The Court will address the five relevant prior sentences in turn.

**1. PSR Paragraph 41 - Possession of Marijuana**

Paragraph 41 of the PSR assessed one criminal history point for Harris's 2009 sentence for second-degree marijuana possession pursuant to U.S.S.G. § 4A1.1(c). (Doc. 158 at 11; Doc. 174 at 11). The PSR noted that Harris was sentenced to "2 years probation and fine" for this offense. (Id.). Harris contends that no criminal history point should have been assessed for this prior

sentence because the sentence was imposed more than ten years prior to the commencement of the instant offense.  (Doc. 291-1 at 15).

Section 4A1.1 of the sentencing guidelines provides the formula for determining a defendant's criminal history category.[7] Section 4A1.1(c) directs the district court, in calculating the criminal history category, to add one criminal history point "for each prior sentence not counted in [§ 4A1.1](a) or (b), up to a total of 4 points for this subsection." U.S.S.G. § 4A1.1(c).  "The

_____

[7] Section 4A1.1 reads:

> The total points from subsections (a) through (e) determine the criminal history category in the Sentencing Table in Chapter Five, Part A.
>
> **(a)** Add 3 points for each prior sentence of imprisonment exceeding one year and one month.
>
> **(b)** Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).
>
> **(c)** Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this subsection.
>
> **(d)** Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status.
>
> **(e)** Add 1 point for each prior sentence resulting from a conviction of a crime of violence that did not receive any points under (a), (b), or (c) above because such sentence was treated as a single sentence, up to a total of 3 points for this subsection.

U.S.S.G. § 4A1.1.

term 'prior sentence' means any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial, or plea of nolo contendere, for conduct not part of the instant offense." Id. at § 4A1.2(a)(1). Certain prior sentences are not counted under § 4A1.1(c), including a sentence that was "imposed more than ten years prior to the defendant's commencement of the instant offense . . . ." Id. at § 4A1.1, cmt. n.3 (citing U.S.S.G. § 4A1.2(e)).

Count seventeen of the indictment alleged that Harris committed the instant offense on July 16, 2018, and Harris confirmed that date in the factual resume. (Doc. 1 at 4; Doc. 154-1 at 2-3). The PSR stated that Harris's prior sentence for second-degree marijuana possession was imposed on January 22, 2009 (Doc. 158 at 11; Doc. 174 at 11), and Harris does not challenge the accuracy of that date. Therefore, contrary to Harris's assertion, the sentence was not imposed more than ten years prior to the commencement of the instant offense, and the PSR properly assessed one point for this prior sentence. See U.S.S.G. § 4A1.2(e)(2) ("Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted."). Accordingly, defense counsel was not ineffective for declining to challenge the assessment of one criminal history point for this prior sentence.

### 2. PSR Paragraph 42 - Possession of Marijuana

Paragraph 42 of the PSR assessed two criminal history points for Harris's 2011 sentence for second-degree marijuana possession pursuant to U.S.S.G. § 4A1.1(b). (Doc. 158 at 11; Doc. 174 at 11). The PSR noted that Harris pled guilty to the offense and was sentenced to "60 days jail and fine." (Id.). Harris claims that he should have only been assessed one point for this prior sentence because his sentence did not exceed sixty days. (Doc. 291-1 at 15). However, § 4A1.1(b) directs that two points be added "for each prior sentence of imprisonment of **at least sixty days** not counted in [§ 4A1.1](a)." U.S.S.G. § 4A1.1(b) (emphasis added). Because Harris's sentence was sixty days exactly, defense counsel was not ineffective for declining to raise a frivolous objection to the proper assessment of two criminal history points for this prior sentence.

### 3. PSR Paragraph 45 - Criminal Trespassing and Domestic Violence

Paragraph 45 of the PSR assessed two criminal history points for Harris's 2013 sentence for third-degree criminal trespassing and third-degree domestic violence by harassment pursuant to U.S.S.G. §§ 4A1.1(b) and 4A1.2(k)(1). (Doc. 158 at 12; Doc. 174 at 12). The PSR noted that Harris was sentenced to thirty days in jail with credit for time served on the criminal trespassing charge and was sentenced to probation with respect to the domestic

violence charge. (Id.). The PSR further noted that Harris's probation was later revoked, and he was sentenced to "180 days in jail." (Id.).

Harris argues that he was improperly assessed two criminal history points for this prior sentence because "'Trespassing' and offenses similar to them, by whatever name they are known are 'never' counted" under the guidelines. (Doc. 291-1 at 15). Harris's contention that trespassing offenses are never counted under the guidelines is simply incorrect. The guidelines specifically provide that sentences for non-felony "Trespassing" offenses "and offenses similar to them," **are counted** if, as in Harris's case, "the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days . . . ." U.S.S.G. § 4A1.2(c)(1). Thus, Harris cannot show that his counsel performed deficiently by failing to object to the assessment of criminal history points for the prior sentence listed in PSR paragraph 45 on the ground that trespassing and similar offenses are never counted under the guidelines.

Moreover, Harris overlooks the fact that paragraph 45 listed sentences for two offenses, third-degree criminal trespassing and third-degree domestic violence by harassment. The PSR reflects that on November 13, 2013, Harris was sentenced to thirty days in jail for criminal trespassing and was sentenced to probation for third-degree domestic violence by harassment. (Doc. 158 at 12;

Doc. 174 at 12).  The PSR further reflects that Harris's probation was subsequently revoked, and he was sentenced to 180 days in jail. (Id.).

The guidelines provide that "prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day[,]" and district courts are directed to "[t]reat any prior sentence covered by (A) or (B) as a single sentence."  U.S.S.G. § 4A1.2(a)(2).  "For purposes of applying § 4A1.1(a), (b), and (c), if prior sentences are treated as a single sentence, use the longest sentence of imprisonment if concurrent sentences are imposed.  If consecutive sentences were imposed, use the aggregate sentence of imprisonment."  Id.  Additionally, § 4A1.2(k)(1) directs: "In the case of a prior revocation of probation, . . . add the original term of imprisonment to any term of imprisonment imposed upon revocation.  The resulting total is used to compute the criminal history points for § 4A1.1(a), (b), or (c), as applicable."  Id. at § 4A1.2(k)(1).  Given the foregoing, Harris has not shown that his counsel was ineffective for failing to object to the assessment of two criminal history points for this prior sentence.

### 4.  PSR Paragraph 47 - Possession of Drug Paraphernalia

Paragraph 47 of the PSR assessed two criminal history points for Harris's 2017 sentence for the use/possession of drug

paraphernalia pursuant to U.S.S.G. § 4A1.1(b). (Doc. 158 at 13; Doc. 174 at 13). The PSR noted that Harris pled guilty to the offense and was sentenced to "1 year jail." (Id.). Harris claims that he should not have been assessed any criminal history points for this prior sentence because "sentences for this offense are never counted." (Doc. 291-1 at 16). However, U.S.S.G. § 4A1.2(c)(2) lists certain non-felony offenses that are never counted when computing a defendant's criminal history, and the use or possession of drug paraphernalia are not among the listed offenses. See U.S.S.G. § 4A1.2(c)(2). Nor is the use or possession of drug paraphernalia among the offenses enumerated in § 4A1.2(c)(1), which lists certain offenses that are counted only if certain conditions are met. See id. at § 4A1.2(c)(1). Thus, defense counsel was not ineffective for declining to object to the PSR's proper assessment of two criminal history points for this prior sentence.

### 5. PSR Paragraph 48 - Failure to Obey and Resisting Arrest

Paragraph 48 of the PSR assessed one criminal history point for Harris's 2019 sentence for failure to obey and resisting arrest pursuant to U.S.S.G. §§ 4A1.1(c) and 4A1.2(c)(1). (Doc. 158 at 13; Doc. 174 at 13). The PSR noted that Harris pled guilty to both offenses and was sentenced to "serve 30 days, with credit for time served." (Id.). Harris argues that "sentences for these offenses or offenses similar to them should never be counted."

(Doc. 291-1 at 16). Again, Harris is incorrect. Failure to obey and resisting arrest are not among the offenses that "are never counted" under § 4A1.2(c)(2). See id. at § 4A1.2(c)(2). Instead, § 4A1.2(c)(1) provides that sentences for "Hindering or failure to obey a police officer" and "Resisting arrest" are counted "only if (A) the sentence was a term of probation of more than one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense." Id. at § 4A1.2(c)(1). The PSR reflects that Harris was sentenced to a term of imprisonment of exactly thirty days for these offenses. (Doc. 158 at 13; Doc. 174 at 13). Therefore, Harris's counsel was not ineffective for declining to object to the proper assessment of one criminal history point for this prior sentence.

In sum, none of Harris's substantive challenges to the calculation of his criminal history score have merit. Consequently, Harris has not shown that his attorney performed deficiently when he did not object to the PSR's criminal history computation on the grounds set forth in the instant § 2255 motion, nor has he shown that he was prejudiced by his counsel's performance during his sentencing proceedings. Harris is therefore entitled to no relief with respect to ground two.

## IV. **CERTIFICATE OF APPEALABILITY**

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the undersigned recommends that a certificate of

appealability in this case be **DENIED**.  See Rules Governing § 2255
Proceedings, R. 11(a) ("The district court must issue or deny a
certificate of appealability when it enters a final order adverse
to the applicant.").  The habeas corpus statute makes clear that
an applicant is entitled to appeal a district court's denial of
his habeas corpus petition only where a circuit justice or judge
issues a certificate of appealability.  See 28 U.S.C. § 2253(c)(1).
A certificate of appealability may be issued only where "the
applicant has made a substantial showing of the denial of a
constitutional right."  Id. at § 2253(c)(2).

When a habeas petition is denied on the merits of the
underlying constitutional claims, a certificate of appealability
may issue only when the petitioner demonstrates "that reasonable
jurists would find the district court's assessment of the
constitutional claims debatable or wrong."  Slack v. McDaniel, 529
U.S. 473, 483-84 (2000) ("To obtain a COA under § 2253(c), a habeas
prisoner must make a substantial showing of the denial of a
constitutional right, a demonstration that . . . includes showing
that reasonable jurists could debate whether (or, for that matter,
agree that) the petition should have been resolved in a different
manner or that the issues presented were adequate to deserve
encouragement to proceed further.") (citation and internal
quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S.
322, 336 (2003).

After reviewing the issues presented in light of the applicable standards, the Court concludes that reasonable jurists would not find the Court's disposition of Harris's claims wrong or debatable, and that none of the issues presented are adequate to deserve encouragement to proceed further. As a result, Harris is not entitled to a certificate of appealability and, consequently, he should not be permitted to proceed *in forma pauperis* on appeal.

## V. CONCLUSION

For the foregoing reasons, it is recommended that Petitioner Montese Harris's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence (Doc. 291) be **DENIED**, that this action be **DISMISSED with prejudice**, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Montese Harris. It is further recommended that any requests for a certificate of appealability or permission to appeal *in forma pauperis* be **DENIED**.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a]

party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1.

In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing done by the Magistrate Judge is not specific.

**DONE** this **18th** day of **October, 2022.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
